No. 22-51041

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————

MELANIE MASON AND DOLORES MASON,
PLAINTIFFS-APPELLEES,

*v.*

HELPING OUR SENIORS, LLC,
DEFENDANT-APPELLANT.

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION

## BRIEF OF APPELLANT

Ryan C. Reed
Anna K. MacFarlane
PULMAN, CAPPUCCIO & PULLEN, LLP
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

*Attorneys for Defendant-Appellant Helping Our Seniors, LLC*

CERTIFICATE OF INTERESTED PERSONS

———————

Case No. 22-51041

———————

Melanie Mason and Dolores Mason,
*Plaintiffs – Appellees*

v.

Helping Our Seniors, LLC,
*Defendant – Appellant*

———————

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal.

| Appellant | Appellant's Counsel |
|---|---|
| Helping Our Seniors, LLC | Ryan C. Reed<br>Anna K. MacFarlane<br>PULMAN, CAPPUCCIO, & PULLEN, LLP<br>2161 NW Military Highway, Suite 400<br>San Antonio, Texas  78213<br>www.pulmanlaw.com<br>(210) 222-9494 Telephone<br>(210) 892-1610 Facsimile |

i

| Appellees | Appellees' Counsel |
|---|---|
| Melanie Mason & Dolores Mason | Michael V. Galo<br>**GALO LAW FIRM, P.C.**<br>4230 Gardendale, Bldg. 401<br>San Antonio, Texas 78229 |

/s/ *Ryan C. Reed*
Ryan C. Reed

4866-6607-5735, v. 3

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant does not request oral argument. The issues before the Court are not complex, and Defendant-Appellant believes that the Court may decide this appeal on submission.

4866-6607-5735, v. 3

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS..........................................................i

STATEMENT REGARDING ORAL ARGUMENT ................................................ iii

TABLE OF CONTENTS ...................................................................................iv

TABLE OF AUTHORITIES...............................................................................vi

STATEMENT OF JURISDICTION .....................................................................viii

STATEMENT OF ISSUES ................................................................................ix

STATEMENT OF THE CASE ...........................................................................1

   A.  Factual Background ........................................................ 1

   B.  Procedural Background.................................................7

STANDARDS OF REVIEW ...........................................................................11

SUMMARY OF THE ARGUMENT ..................................................................12

ARGUMENT ...............................................................................................14

   I.   The district court erred in finding that HOS is an "employer" for the purposes of Title VII..........................................................14

   II.  The district court erred in finding that Melanie was terminated for engaging in protected activity...................................................21

   III. The district court erred in awarding compensatory damages for mental anguish because insufficient evidence was presented at trial...........................................................................................24

iv

IV. The district court erred in awarding Melanie and Dolores punitive damages. ....................................................................... 29

CONCLUSION ........................................................................... 31

ECF CERTIFICATION ................................................................. 35

CERTIFICATE OF SERVICE ......................................................... 36

CERTIFICATE OF COMPLIANCE ................................................... 37

v

## TABLE OF AUTHORITIES

**Case Law** **Page**

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006) ........................................................ 15

*Arete Partners, L.P. v. Gunnerman*,
594 F.3d 390 (5th Cir. 2010) ........................................ 11

*Becker v. Tidewater, Inc.*,
586 F.3d 358 (5th Cir. 2009) ........................................ 11

*Broussard v. L.H. Bossier, Inc.*,
789 F.2d 1158 (5th Cir. 1986) ...................................... 16

*Diggs v. Harris Hosp.-Methodist, Inc.*,
847 F.2d 270 (5th Cir. 1988) ........................................ 16

*Farpella-Crosby v. Horizon Health Care*,
97 F.3d 803 (5th Cir. 1996) .......................................... 29

*Juino v. Livingston Parish Fire Dist. No. 5*,
717 F.3d 431 (5th Cir. 2013) ........................................ 15

*Mares v. Marsh*,
777 F.2d 1066 (5th Cir. 1985) ...................................... 16

*Migis v. Pearle Vision, Inc.*,
135 F.3d 1041 (5th Cir. 1998) ................................. 24, 25

*Nunez v. Allstate Ins. Co.*,
604 F.3d 840 (5th Cir. 2010) ........................................ 11

*Patterson v. P.H.P. Healthcare Corp.*,
90 F.3d 927 (5th Cir. 1996) .......................................... 24

vi

## Case Law (con't)                                                   Page

*Spirides v. Reinhardt*,
    613 F.2d 826 (D.C. Cir. 1979) ............................................ 16, 17, 18

*Williams v. Manitowoc Cranes, L.L.C.*,
    898 F.3d 607 (5th Cir. 2018) ........................................................ 11

## Statutes                                                            Page

42 U.S.C. 2000e-3(a) ................................................................... 21

42 U.S.C. 2000e(b) ..................................................................... 15

42 U.S.C. § 1981a(1)(b)(1) ................................................... 28, 29

42 U.S.C. § 1981a(1)(b)(3) ......................................................... 24

## STATEMENT OF JURISDICTION

The district court properly exercised subject matter jurisdiction under 28 U.S.C. § 1331. The lawsuit was brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). The parties consented to the jurisdiction of the magistrate judge and the case was tried without a jury on August 29 and 30, 2022. The district court entered its final judgment dispositive of all of the parties' claims on October 31, 2022, awarding Plaintiff-Appellee Melanie Mason $2,080.00 in lost wages, $10,000.00 in compensatory mental anguish damages, and $5,000.00 in punitive damages, and awarding Plaintiff-Appellee Dolores Mason $51,802.00 in lost wages, $10,000.00 in compensatory mental anguish damages, and $5,000.00 in punitive damages. The district court further taxed Defendant-Appellant for costs of court in the amount of $2,709.95, and post-judgment interest at the rate of 4.15 percent per annum. On November 28, 2022, Defendant-Appellant timely filed a Notice of Appeal. Accordingly, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

4866-6607-5735, v. 3

## STATEMENT OF ISSUES

1.    Whether the district court erred in finding that Defendant-Appellant Helping Our Seniors, LLC was an "employer" as defined in Title VII of the Civil Rights Act of 1964.

2.    Whether the district court erred in finding that Plaintiffs-Appellees were terminated for engaging in protected activity under Title VII of the Civil Rights Act of 1964.

3.    Whether the district court erred in awarding mental anguish damages against Defendant-Appellant Helping Our Seniors, LLC.

4.    Whether the district court erred in awarding punitive damages against Defendant-Appellant Helping Our Seniors, LLC

4866-6607-5735, v. 3

STATEMENT OF THE CASE

## A.    Factual Background

Defendant-Appellant Helping Our Seniors, LLC ("HOS") is in the business of matching caregivers with elderly individuals in the San Antonio, Texas area and has been in business since 2012. ROA.413. HOS is owned and operated by Martha Cave ("Ms. Cave") and the business is run out of the home she shares with her husband in San Antonio, Texas. ROA.413.

HOS's business model functions as a matching service for caregivers. ROA.531. HOS maintains a client roster of elderly individuals who need help running errands or taking care of their homes and facilitates the assignment of caregivers to provide assistance at a client's house pursuant to the client's specific needs and instructions. *See* ROA.531. At the time of Dolores and Melanie's termination, HOS employed fewer than ten employees who worked out of the office performing administrative functions. ROA.414. HOS maintains an active roster of caregivers who were paid as independent contractors. ROA.411.

HOS maintains that the caregivers were not employees. At the outset of the working relationship, each new caregiver (including the

1

Plaintiffs-Appellees) signed an independent contractor agreement, which expressly provides that the relationship is an independent contractor relationship. ROA.424. The general qualifications for being a caregiver for HOS include being 18 years of age or older, having a high school diploma or equivalent, having a valid driver's license with a reliable transportation method to get to client's residences, and having relevant caretaking experience. ROA.806.

The caregivers performed their duties solely at client residences and did not work in the HOS home office. ROA.411-13. HOS did not and does not provide the caregivers with any equipment to perform their job duties at a client's residence. ROA.430. The caregivers are paid by the hour for the time they spend working at a client's home. ROA.421. The working relationship could be terminated at any time by either HOS or the caregiver, ROA.459, and the caregivers could choose which assignments to take at their discretion. ROA.431. HOS does not provide paid leave or retirement benefits to the caregivers. ROA.783. HOS does not pay social security taxes for the caregivers. ROA.783. Each caregiver files his or her own U.S. Federal Tax Return with the Internal Revenue Service as an independent contractor. ROA.783.

2

HOS employed a handful of employees that worked at the main office performing administrative functions. ROA.414. Plaintiffs-Appellees Melanie Mason ("Melanie") and Dolores Mason ("Dolores") were two such office employees at HOS at the time that they were discharged. ROA.414. Melanie and Dolores began working for HOS as caregivers in 2015 and 2016, respectively. ROA.838, ROA.782. After some time, Melanie and Dolores were both promoted to office employees and infrequently acted as caregivers after being promoted. ROA.544, ROA.602. At the time of their termination, Plaintiffs-Appellees were both office employees and Melanie worked as an Office Assistant, ROA.602, and Dolores worked as a Caregiver Coordinator, ROA.544. Melanie and Dolores were generally good employees until the incident on April 6, 2018. ROA.537.

On Friday April 6, 2018, Ms. Cave was at the office in the afternoon processing invoices to send out to clients, which she did every Friday. ROA.514. Ms. Cave's office was close enough to the other office employees, but not so close so as to be able to hear details of conversations. ROA.516-17. Ms. Cave received a call from a client who reported that the assigned caregiver was not present when expected.

3

ROA.503. Ms. Cave set out to go to the client's house to assist the client and requested that Dolores accompany her, but Dolores refused. ROA.503. In the end, Ms. Cave requested that Tiffany Rodriguez, another office employee, accompany her to the client's home, and she assented. ROA.503. Ultimately, Ms. Cave and Tiffany Rodriguez returned almost immediately because they received a phone call from the client that the caregiver was, in fact, at the house but had been in another room. ROA.504.

When Ms. Cave and Tiffany Rodriguez returned to HOS after the client located the caregiver, Ms. Cave went into her office to continue her work processing invoices and heard Melanie and Dolores' disruptive behavior. ROA.504. While in her office processing invoices, Ms. Cave could hear Melanie and Dolores speaking to one another in raised voices that Ms. Cave characterized as "yelling." ROA.504. The yelling and raised voices continued for some time. ROA.504-05. As a result of the disruptive behavior exhibited by Melanie and Dolores in the office that day, Ms. Cave made the decision to terminate their employment. ROA.508. The next morning when Melanie and Dolores arrived for work at the HOS office, Ms. Cave terminated their employment. ROA.477-78.

4

Immediately after Ms. Cave announced that she was terminated their employment, Melanie began recording the conversation, but the recording did not capture the entire conversation. ROA.480.[1] Melanie and Dolores confronted Ms. Cave and demanded that Ms. Cave talk to them about their termination. ROA.581, ROA.634-35. On the recorded portion, Ms. Cave said that she did not want to talk to Melanie and Dolores because they called the "Labor Board." ROA.634. It is not clear whether Ms. Cave meant the U.S. Equal Employment Opportunity Commission ("EEOC"), and she never mentions the EEOC by name. ROA.519. Despite what Melanie and Dolores claim, the recording never captured Ms. Cave saying "I am firing you because Melanie called the EEOC." Rather, Ms. Cave said she was terminating their employment because of what they "did yesterday," by which she meant the disruptive behavior in the office. ROA.481-83.

Melanie and Dolores presented another version of the events that transpired on April 6 and 7, 2018, contending that their employment was

---

[1] The recording was not transcribed into the record when it was played for the district court at trial. *See* ROA.480. No certified transcription of the recording was offered as evidence at the trial.

5

terminated because Melanie called the EEOC to report sexual harassment in the workplace. ROA.42-46, ROA.578, ROA.649. In her complaint, Melanie and Dolores alleged that Ms. Cave's husband would watch pornographic videos in his private space in the house while Melanie was working in another area of the office on the weekends. ROA.43-46. Neither Melanie nor Dolores ever raised this issue with Ms. Cave, according to Ms. Cave, and despite the Plaintiffs-Appellees' testimony that Melanie did talk to Ms. Cave, ROA.607-08, there is no documentation whatsoever to indicate that this was an issue Melanie communicated to anyone at HOS prior to her termination. Melanie asserted that on April 6, 2018 she called the EEOC intending to make a formal complaint by phone, ROA.612, and that Ms. Cave learned about the phone call and decided to fire both Melanie and Dolores as a result of the phone call to the EEOC, ROA.649. There is no evidence that Ms. Cave knew who exactly Melanie called or why.

After being terminated, Melanie was able to find a job within a couple of months. ROA.621. Dolores testified that she looked for work until September 2019 and then stopped. ROA.566. Approximately six

6

months post-termination, Melanie and Dolores and Dolores' youngest daughter, moved to Wichita Falls. ROA.589-90.

## B.    Procedural Background

On April 9, 2021, almost exactly three years after the termination of their employment at HOS, Melanie and Dolores filed suit against HOS for retaliatory discharge under Title VII of the Civil Rights Act of 1964. ROA.10. Melanie and Dolores alleged that they were both discharged on April 7, 2018 because Ms. Cave allegedly learned that Melanie called the EEOC to complain about sexual harassment at the workplace. ROA.11-13. On May 3, 2021, HOS filed a motion to dismiss the lawsuit under Federal Rule of Civil Procedure 12(b)(6). ROA.21. On May 17, 2021, Melanie and Dolores responded in opposition to HOS's motion to dismiss and requested leave to file an amended complaint. ROA.28. On May 18, 2021, the district court granted Melanie and Dolores' leave to file an amended complaint by text order, and the amended complaint was filed on the same day. ROA.42.

On May 28, 2021, HOS answered Melanie and Dolores' amended complaint. ROA.47. HOS asserted numerous affirmative defenses in its answer, including: (1) HOS was not an "employer" under Title VII during

7

the relevant time period; (2) to the extent HOS was an "employer" under Title VII, HOS had a legitimate, nonretaliatory reason for discharging Melanie and Dolores; (3) Melanie and Dolores failed to exhaust administrative remedies; and (4) asserting state and federal defenses related to caps on exemplary damages. ROA.49-50.

On July 2, 2021, the Court entered its Transfer Order, assigning the case to the Magistrate Judge after the parties consented to proceed under the jurisdiction of the Magistrate Judge. ROA.70.

On May 2, 2022, after the parties engaged in written discovery and depositions, HOS filed its Motion for Summary Judgment, seeking judgment as a matter of law that HOS did not qualify as an "employer" under the definition supplied in Title VII. ROA.93, ROA.95-99. In support of its Motion for Summary Judgment, HOS supplied a declaration signed by Martha Cave ("Ms. Cave"), the manager and administrator of HOS. ROA.101-02. HOS also included the transcript from Ms. Cave's deposition that was taken on March 28, 2022. ROA.103-21. Melanie and Dolores responded to HOS's summary judgment motion arguing that HOS qualified as an "employer" because the caregivers were misclassified as independent contractors instead of employees. ROA.125,

8

ROA.127-34. In support, Plaintiffs-Appellees attached various documents, including Plaintiffs-Appellees' independent contractor agreements, caregiver duties checklist, and other purported policy documents of HOS. ROA.137-208. On June 9, 2022, the district court entered an order denying HOS's Motion for Summary Judgment, finding that the Plaintiffs-Appellees raised sufficient genuine issues of material fact to merit the case proceeding to trial. ROA.217.

From August 29 - 30, 2022, this case was tried without a jury. ROA.398-777. Live testimony was heard from five witnesses: Ms. Cave, Melanie, Dolores, and two office employees of HOS, Tiffany Rodriguez and Victor Blalock. ROA.399, ROA.667. The district court issued its Findings of Fact and Conclusions of Law ("FOF COL") on October 13, 2022, ROA.294-312, and entered Final Judgment in favor of Plaintiffs-Appellees on October 31, 2022, ROA.333. The district court awarded Melanie Mason $2,080.00 in lost wages, $10,000.00 in compensatory mental anguish damages, and $5,000.00 in punitive damages, and awarded Dolores Mason $51,802.00 in lost wages, $10,000.00 in compensatory mental anguish damages, and $5,000.00 in punitive

damages. ROA.333. The district court also awarded Melanie and Dolores costs of court in the amount of $2,709.95. ROA.333.

On November 28, 2022, HOS timely filed its Notice of Appeal. ROA.371.

10

## STANDARDS OF REVIEW

When reviewing findings of fact and conclusions of law entered after a bench trial, "findings of fact are reviewed for clear error and legal issues are reviewed de novo." *Becker v. Tidewater, Inc.*, 586 F.3d 358, 365 (5th Cir. 2009). A reviewing court "will find clear error if (1) the findings are without substantial evidence to support them; (2) the court misinterpreted the effect of the evidence; or (3) although there is evidence which, if credible, would be substantial, the force and effect of the testimony, considered as a whole, convinces the court that the findings are against the preponderance of credible testimony." *Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 394 (5th Cir. 2010).

Evidentiary rulings by the district court are reviewed for abuse of discretion. *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 626 (5th Cir. 2018). "The harmless error doctrine applies to the review of evidentiary rulings, so even if a district court has abused its discretion, [the reviewing court] will not reverse unless the error affected 'the substantial rights of the parties.'" *Id.* (quoting *Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844 (5th Cir. 2010)).

11

### SUMMARY OF THE ARGUMENT

The district court erred in entering judgment against HOS as reasoned in its FOF COL for three reasons. First, HOS does not qualify as an "employer" under Title VII's definition. It was not disputed whether Melanie and Dolores were employees of HOS at the time. The case hinged on whether the fifty or more caregivers of HOS were employees or independent contractors. Melanie and Dolores argue that the caregivers were misclassified by HOS and should have counted towards HOS's total number of employees for the purposes of Title VII. The trial court erred in finding that the caregivers were misclassified as independent contractors. Each of the caregivers signed independent contractor agreements, intended to reap the benefits of working as independent contractors, including enjoying the freedom to accept or reject jobs at their discretion, and performed caregiving tasks independently and without supervision of HOS. HOS did not provide any employee benefits to the caregivers, and did not pay social security taxes for them.

Second, the district court erred in finding that there was sufficient credible evidence that Melanie and Dolores were terminated for engaging in a protected activity. The evidence at trial demonstrated that Ms. Cave

12

did not know that Melanie had allegedly engaged in protected activity. The evidence indicates that Ms. Cave heard of a phone call, but the evidence is less than clear concerning what Ms. Cave knew as to who Melanie called or why. The partial video recording of the confrontation between Melanie, Dolores, and Ms. Cave (while not in the record) reveals at most that Ms. Cave did not want to talk to Melanie or Delores anymore because of Melanie's phone call to the "Labor Board." At no time did Ms. Cave state that she terminated Melanie and Dolores because of the phone call, and there is no credible evidence that she did so.

Third, the district court erred in awarding Melanie and Dolores $10,000.00 each in compensatory mental anguish damages. There was insufficient credible evidence presented at trial regarding Melanie and Dolores' mental state following the alleged Title VII violation. Dolores (Melanie's mother) testified that she was "sad" and felt "bad" for what happened to Melanie. Additionally, the district court erred in sustaining a relevance objection and disallowing questions on cross-examination of other potential causes of Dolores' emotional distress.

Finally, the district court erred in awarding punitive damages to Melanie and Dolores in the amount of $5,000.00 each. There was

13

insufficient testimony presented at trial to show that Ms. Cave made the decision to terminate Melanie and Dolores with "malice" or "reckless disregard" of their rights under Title VII. Ms. Cave did not terminate Melanie and Dolores in retaliation for any phone call to the EEOC. Rather, Ms. Cave consistently testified that she made the decision to terminate Melanie and Dolores because of their extremely disruptive behavior in the workplace the day before, and she did not even know that Melanie had called for certain, who she called, or why she called. As such, the district court's award of punitive damages was inappropriate and in error.

ARGUMENT

## I.     The district court erred in finding that HOS is an "employer" for the purposes of Title VII.

Melanie and Dolores failed to satisfy their burden of proof because they presented insufficient evidence at trial to support the district court's finding that HOS qualified as an "employer" under Title VII's definition. The trial court erred in ruling that HOS is an "employer" under the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII"). Under Title VII, an employer as defined as "a person engaged in an industry

14

affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). Independent contractors do not count towards a company's total amount of employers. *See Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 434 (5th Cir. 2013). Because HOS did not employ the requisite number of employees in 2017 and 2018 to qualify as an "employer" for the purposes of Title VII, the Court erred in finding that Title VII applied to HOS. HOS does not dispute that Melanie and Dolores were administrative office employees of HOS at the time they were terminated. ROA.414. The sole employees of HOS are the office employees, of where there were fewer than ten during the relevant time period (2017 to 2018) – far fewer than the required number to qualify as an employer under Title VII. *See* 42 U.S.C. § 2000e(b). Accordingly, HOS maintains that it is not an "employer" under the definition of Title VII.

Plaintiffs in a Title VII action bear the burden of proving that an employer meets the statutory definition. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006). Whether a worker is classified as an employee or an independent contractor is determined by the factor-driven hybrid

15

economic realities/common law control test that was first developed in *Spirides v. Reinhardt*, 613 F.2d 826 (D.C. Cir. 1979). This test has been consistently applied by this Court. *See Diggs v. Harris Hosp.‑Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir. 1988) (applying the *Spirides* hybrid economic realities/common law control test to determine whether an employer‑employee relationship existed for the purposes of Title VII); *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir. 1986) (same); *Mares v. Marsh*, 777 F.2d 1066, 1067 (5th Cir. 1985) (same).

The hybrid test weighs various factors to examine "the economic realities of the working relationship, and the extent to which the one for whom the work is being done has the right to control the means by which the work is to be performed, with emphasis on the factor of control." *See Diggs*, 847 F.2d at 272.

The district court erred in finding that HOS was an "employer" as defined by Title VII. As an initial matter, HOS never exerted control over the "means and manner" of the caregivers' job performance. *See Spirides*, 613 F.2d at 831. At all times, the caregivers performed their duties at the respective client's residence. ROA.411‑13. HOS would match caregivers based on client needs. ROA.411‑13. Each client has a different set of

16

requirements and needs for caregiving assistance. ROA.411-13. For example, some clients just need companionship, help with light housework, and assistance with running errands, while other clients require more extensive assistance. ROA.411-13. Caregivers have the option to accept a client job and have complete discretion in how to perform their duties in assisting clients. ROA.431. In fact, Ms. Cave testified that "[t]here's no way that [HOS] can provide supervision over [the] caregivers." ROA.529. As such, there substantial evidence that HOS did not control how the caregivers performed their job duties.

In addition to whether there was sufficient control over the workers, courts consider the following factors:

(1)  The kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision;
(2)  The skill required in the particular occupation;
(3)  Whether the "employer" or the individual in question furnishes the equipment used and the place of work;
(4)  The length of time during which the individual has worked;
(5)  The method of payment, whether by time or by the job;
(6)  The manner in which the work relationship is terminated; i.e. by one or both parties with or without notice and explanation;
(7)  Whether annual leave is afforded;
(8)  Whether the work is an integral part of the business of the "employer";
(9)  Whether the worker accumulates retirement benefits;

17

(10)   Whether the "employer" pays social security taxes; and

(11)   The intention of the parties.

*Spirides*, 613 F.2d at 832.

The first, second, and third factors weigh in favor of the caregivers being independent contractors, not employees of HOS. Testimony elicited at trial tended to show that the caregivers were able to perform and did perform their job duties without supervision from HOS. ROA.529. At trial, Martha Cave testified that the elderly clients were the ones who set the duties for each caregiver. ROA.529. The testimony elicited at trial also showed that each caregiver was assigned to a client site and that there was no on-site supervision by HOS. ROA.531, ROA.529. Rather than HOS supervising, the client dictated what the caregivers did at each client site. Additionally, special skills were required in performing caregiver duties and each specific skillset is entirely dependent on each specific client's needs. ROA.531. The duties of a caregiver are not labor intensive and typically involve assisting the client with errands, cleaning up around the home, and helping to bathe the client. ROA.411-13. The supervision of the caretakers is provided by the client not HOS. ROA.529. Additionally, Ms. Cave testified that any equipment used by the

18

caregivers was provided by the client, not HOS. ROA.430. As such, the first, second, and third factors weigh in favor of the caregivers as independent contractors, not HOS employees.

The sixth, seventh, ninth, and tenth factors also weigh in favor of the caregivers being independent contractors. As part of the working relationship, HOS did not provide annual leave to caregivers. ROA.783. Ms. Cave testified that the work relationship could be terminated by either party without notice. ROA.459. Finally, the caregivers did not accumulate retirement benefits and HOS did not pay social security taxes. ROA.783. As such, the sixth, seventh, ninth, and tenth factors weigh in favor of the caregivers being independent contractors, not employees.

Finally, the eleventh factor weighs heavily in favor of caregivers as independent contractors. When HOS would engage a new caregiver, both HOS and the caregivers intended the working relationship to be an independent contractor relationship. ROA.525. Each new caregiver would sign an independent contractor agreement and Ms. Cave testified that each new caregiver was explained the rules and understood the working relationship, particularly that they would be independent

19

contractors and not employees of HOS. ROA.525, ROA.534-35. Melanie and Dolores even signed independent contractor agreements before becoming office employees, ROA.838, ROA.782, and never complained to Ms. Cave about their roles as independent contractors when they performed caregiver services. ROA.523-24. As such, the eleventh factor weighs in favor of the caregivers being independent contractors.

In conclusion, the district court erred in finding that Plaintiffs-Appellees met their burden of proving that HOS was an "employer" under the definition in Title VII. There was substantial evidence in the record that the caregivers who contracted with HOS were independent contractors, not employees. As is evident from the testimony and evidence presented at trial, the caregivers performed their duties for clients of HOS as independent contractors, not employees. HOS and the caregivers intended the relationship to be an independent contractor relationship, and HOS did not exert control over the "means and manner" of how the caregivers did their work – the clients did. Additionally, the economic realities factors weigh in favor of the caregivers being independent contractors, not employees. As such, this case should be

20

reversed and rendered, or, in the alternative, remanded for further proceedings.

## II. The district court erred in finding that Melanie was terminated for engaging in protected activity.

The district court erred in finding that there was sufficient credible evidence presented at trial that Melanie and Dolores were terminated because Melanie engaged in a protected activity. Protected activity occurs when an employee has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. 2000e-3(a). The sole cause of action in the underlying case was retaliatory discharge, not for sexual harassment in the workplace. ROA.42-46.

Melanie and Dolores contended that they were terminated because Melanie called the EEOC to report alleged sexual harassment at the workplace, even though she never spoke with anyone at the EEOC. ROA.42-46, ROA.183, ROA.229. The evidence at trial was conflicting as to whether Melanie and/or Dolores ever spoke to Ms. Cave about her husband's behavior. Melanie testified that she brought up Ms. Cave's

21

husband's behavior with Ms. Cave in January and March 2018. ROA.608-09. However, Melanie and Dolores also testified that they "tried" to speak with Ms. Cave, but never did. ROA.557, ROA.561, ROA.592-93. On the other hand, Ms. Cave testified that she was never approached by Melanie or Dolores about the concerns regarding Ms. Cave's husband. ROA.521. But whether they discussed the alleged sexual harassment with Ms. Cave is irrelevant, as the protected activity they claimed to have been terminated over was a phone call to the EEOC. As such, there is insufficient credible evidence that Melanie and Dolores formally sat down and talked to Ms. Cave about Melanie's concerns.

The district court also erred in finding that Melanie engaged in protected activity under the "participation" clause of Title VII. ROA.304. At trial, Melanie testified that she did not speak with anyone at all and hung up before she spoke with anyone. ROA.614. Nevertheless, the district court found that Melanie's phone call was sufficient to "make a charge" or otherwise participate in a Title VII investigation. ROA.303. This finding is in error because the language of the statute clearly contemplates active participation in an investigation, not calling the

22

EEOC, being placed on hold, and hanging up before speaking with anyone.

Ms. Cave consistently testified that she terminated Melanie and Dolores because of their behavior on April 6, 2018. *See* ROA.480-83. Ms. Cave did not know who Melanie had called or why. The evidence indicates that Ms. Cave heard of a phone call, but the evidence is less than clear concerning what Ms. Cave knew as to who Melanie called or why. The partial video recording of the confrontation between Melanie, Dolores, and Ms. Cave (while not in the record) reveals at most that Ms. Cave did not want to talk to them further because of Melanie's phone call to the "Labor Board." ROA.634. At no time did Ms. Cave state that she terminated Melanie and Dolores because of the phone call, and there was no credible evidence presented at trial that she did so.

As such, the district court erred in finding that Melanie and Dolores were fired because Melanie engaged in a protected activity under Title VII. There is no credible testimony that Melanie and/or Dolores were terminated for allegedly bringing their concerns about Ms. Cave's husband's behavior to Ms. Cave. Additionally, Melanie did not "participate" in an investigation or proceeding by calling the EEOC, being

23

placed on hold, and then hanging up before she could speak to anyone,

nor does the evidence credibly support the conclusion that Ms. Cave

terminated an employee because the employee called someone (maybe

the EEOC) about some unknown issue. As such, this case should be

reversed and rendered, or remanded for further proceedings.

III.  **The district court erred in awarding compensatory damages for mental anguish because insufficient evidence was presented at trial.**

The district court erred in awarding $10,000.00 each in

compensatory mental anguish damages to Melanie and Dolores because

there was insufficient evidence presented at trial to support such awards.

Mental anguish damages can be awarded as a type of compensatory

damage in the event of a violation under Title VII. *See* 42 U.S.C. §

1981a(1)(b)(3). An award of mental anguish damages must be supported

by "testimony and/or other evidence to show the nature and extent of

emotional harm *caused by the alleged violation*." *Migis v. Pearle Vision,

Inc.*, 135 F.3d 1041, 1053 (5th Cir. 1998) (emphasis in original). "[M]ental

anguish damages cannot be recovered absent 'some specific discernable

injury to the claimant's emotional state.'" *Id.* (quoting *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996)).

The sole cause of action in the underlying litigation was for retaliatory discharge under Title VII. ROA.42-46. As such, to support an award of compensatory damages, there must have been sufficient evidence presented at trial to specify a particularized injury to Plaintiffs-Appellees' mental states as a result of the alleged retaliatory discharge. *Migis*, 135 F.3d at 1053. Plaintiffs-Appellees' evidence was insufficient and thus the district court erred in awarding compensatory damages. Testimony concerning impact on emotional state from events that allegedly occurred while Melanie and Dolores were working at HOS are not relevant. Dolores' and Melanie's testimony at trial that was specific to their emotional state *after* the termination was insufficient to support the award of mental anguish damages.

Dolores testified that she felt "hurt" watching Melanie allegedly be laughed at while the two were still employed by HOS. ROA.590. This testimony concerning how Melanie's alleged treatment at HOS made Dolores feel does not relate to any particularized damage to Dolores' mental state as a result of the purported violation of retaliatory

discharge, which was the sole claim brought in the underlying suit. Dolores also testified that, while she lost weight, she was already trying to lose weight. ROA.572. She said she felt "bad, especially for [her] daughter" and "sad about what [Melanie] had gone through." ROA.572. Dolores' testimony focused on how she primarily felt bad for her daughter and what she had gone through. ROA.572. Dolores also testified that she had to take medication for antidepressants, ROA.573, but also testified that she had a history of depression, ROA.594. There was insufficient evidence concerning why Melanie and Dolores had to move to Wichita Falls despite the fact Melanie found a job two months after being terminated from HOS.

The district court abused its discretion by sustaining a relevance objection and disallowing a line of questioning regarding other similar and contemporaneous events that could have contributed to the alleged mental anguish suffered by Dolores. ROA.583-85. At trial, counsel for Plaintiffs-Appellees' objected to the relevance of a line of questioning regarding Dolores losing her nursing license. ROA.583-85. The district court sustained the objection, rejecting the argument that Dolores' reaction to a far more severe loss would be instructive to the district

26

court's examination of any particularized injury to her mental state as a result of the termination from HOS. ROA.583-85. The district court's abuse of discretion was not harmless error, because disallowing this line of questioning prejudiced HOS by hampering its ability to present evidence relevant to Dolores' claimed mental anguish damages. Stated differently, a person who has gone through something as traumatic as losing a professional license is not likely to credibly suffer from mental anguish from losing a job.

Melanie also testified at trial regarding damage to her emotional state. Specifically, she testified that she became depressed, had anxiety, and tried various antidepressants, but "[n]one of them worked for [her]." ROA.624-25. She testified that she tried different medications for "about a year" but she did not say why they did not work, what her symptoms were, or how many medications she tried and failed. ROA.626. In the section of its FOF COL regarding mental anguish damages, the district court considered Melanie's testimony that she was upset when she learned that Ms. Cave told potential future employers that she suspected that Melanie was involved in "financial improprieties." ROA.310. This

27

evidence does not tend to show Melanie's injured emotional state as a result of the retaliatory discharge.

Finally, even taking the Plaintiffs-Appellees' testimony as true as to their alleged mental anguish damages, Melanie and Dolores complain that they were terminated because Melanie called the EEOC to report the alleged sexual harassment taking place at HOS. ROA.217. However, Melanie did not talk to anyone and did not make a formal complaint before being terminated. ROA.614. Simply put, from the Plaintiffs-Appellees' perspective, they were terminated because Melanie made a call to the EEOC but never talked to anyone. Even if this was the reason for the termination, which it was not, this is not the type of conduct that gives rise to any marked type of mental anguish, other than simply the loss of a job, which is an unfortunate part of life. Thus, the district court erred in awarding compensatory mental anguish damages and this case should be reversed and rendered, or, in the alternative, remanded for further proceedings.

28

**IV.** **The district court erred in awarding Melanie and Dolores punitive damages.**

The district court erred in awarding punitive damages to Melanie and Dolores in the amount of $5,000.00 each. Punitive damages may be awarded to a Title VII plaintiff. 42 U.S.C. § 1981a(b)(1). To support an award of punitive damages in a Title VII case, "the plaintiff must show that the defendant acted 'with malice or with reckless indifference.'" *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 809-10 (5th Cir. 1996). There is no such evidence in this case.

Aside from Melanie and Dolores' self-serving testimony at trial, the testimony consistently supported that Melanie and Dolores were terminated because of their extremely disruptive behavior the day before. Tiffany Rodriguez and Victor Blalock, two witnesses who were working in the office on the day in question, testified at trial that Melanie and Dolores had been extremely disruptive in the office on April 6, 2018. ROA.700, ROA.714. Ms. Cave also testified that the sole reason that she terminated Melanie and Dolores' employment was their disruptive behavior on April 6, 2018. ROA.480-83.

Ms. Cave testified that Melanie had the right to call the EEOC and would not have terminated her because of that. ROA.510-11, ROA.520. There is simply no evidence of "malice" or "reckless indifference," as required by the statute, nor any other evidence substantiating the amount of punitive damages awarded by the district court. 42 U.S.C. § 1981a(b)(1). As discussed in section II, *supra*, Ms. Cave terminated Melanie and Dolores because of their behavior on April 6, 2018. *See* ROA.480-83. Ms. Cave did not know who Melanie had called on April 6, 2018, or why. The partial video recording of the confrontation between Melanie, Dolores, and Ms. Cave (while not in the record) reveals at most that Ms. Cave did not want to talk to them further because of Melanie's phone call to the "Labor Board." ROA.237. At no time did Ms. Cave plainly state that she terminated Melanie and Dolores because of the phone call, and there was no credible evidence presented at trial that she did so. In fact, Ms. Cave testified that she would never terminate someone for contacting the EEOC or some other government agency. ROA.510-11. As such, there is insufficient evidence in the record that Ms. Cave acted willfully or maliciously in terminating Melanie and Dolores as result of Melanie's phone call to the EEOC.

30

Assuming that Ms. Cave terminated Melanie and Dolores'
employment because of Melanie's call to the EEOC, which HOS
vehemently denies, it does not follow that Ms. Cave would decide to
retaliate against both of them. Rather, Ms. Cave decided to terminate the
employment of both Melanie and Dolores because of both of their
extremely disruptive behavior the day before, which was not tolerable at
the office. As such, there was insufficient evidence that Ms. Cave
terminated Melanie and Dolores because of Melanie's phone call to the
EEOC or that she did so in willful violation of Melanie and Dolores' rights
under Title VII.

## CONCLUSION

The district court erred in entering judgment against HOS. First,
there was substantial credible evidence presented at trial that HOS did
not qualify as an "employer" under Title VII's definition. The caregivers
who contracted with HOS all understood the working relationship and
agreed to it by signing an independent contractor agreement.
Additionally, per the agreement with HOS, all of the caregivers enjoyed
the freedom to accept or reject jobs at their discretion and performed
caregiving tasks independently and without supervision of HOS. HOS

31

did not provide any employee benefits to the caregivers, and did not pay social security taxes for them. All caregivers filed taxes on their own as independent contractors.

There was insufficient credible evidence presented at trial that Melanie and Dolores were terminated because Melanie engaged in a protected activity under Title VII. The balance of the credible testimony and evidence presented at trial demonstrates that Melanie and Dolores tried to speak with Ms. Cave about her husband's activities, but Ms. Cave testified that they never talked to her about it. Additionally, the district court erred in finding that Melanie's phone call to the EEOC qualified as sufficient "participation" under Title VII. Melanie testified that her phone call consisted of waiting on hold for five minutes and then hanging up before speaking to anyone.

Third, there was insufficient credible evidence presented at trial regarding Melanie and Dolores' mental state following the alleged Title VII violation. Dolores testified that she was "sad" and felt "bad" for what happened to Melanie. Additionally, the district court erred in sustaining a relevance objection and disallowing questions on cross-examination of

32

other potential causes of Dolores' emotional distress, which prejudiced HOS' defense of the claim against it.

Finally, there was insufficient evidence presented at trial to show that Ms. Cave made the decision to terminate Melanie and Dolores with "malice" or "reckless disregard" of their rights under Title VII. Ms. Cave consistently testified that she made the decision to terminate Melanie and Dolores because of their disruptive behavior in the workplace the day before, and that she did not even know that Melanie had called for certain, who she called, or why she called. Finally, Ms. Cave testified that she would not terminate an employee for contacting the EEOC. For these reasons, the district court's judgment should be reversed and rendered, or, in the alternative, the case should be remanded for further proceedings.

33

Respectfully Submitted,

PULMAN, CAPPUCCIO & PULLEN, LLP
2161 NW Military Highway
Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Ryan C. Reed*
    Ryan C. Reed
    Texas State Bar No. 24065957
    rreed@pulmanlaw.com
    Anna K. MacFarlane
    Texas State Bar No. 24116701
    amacfarlane@pulmanlaw.com

COUNSEL FOR DEFENDANT-
APPELLANT

34

## ECF Certification

I certify that: (1) required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Ryan C. Reed*
Ryan C. Reed

## CERTIFICATE OF SERVICE

I certify that the foregoing instrument has been served via the Court's electronic filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on April 4, 2023, on all registered counsel of record identified below:

Michael V. Galo, Jr.
Galo Law Firm, P.C.
4230 Gardendale, Bldg. 401
San Antonio, Texas 78229


*/s/ Ryan C. Reed*
Ryan C. Reed

36

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies this brief complies with the type-volume limitations of Rule 32(a)(7)(B).

1. Exclusive of the exempted portions in Federal Rule of Appellate Procedure 32(f), the brief contains 6,441 words.



2. The brief has been prepared in proportionally spaced typeface using Microsoft Word for Windows 365 in 14-point, Century font.

3. The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Federal Rule of Appellate Procedure 32(a)(7)(B), may result in the court's striking the brief and imposing sanctions against the person signing the brief.

*/s/ Ryan C. Reed*
Ryan C. Reed

4866-6607-5735, v. 3