CASE NO. 22-51041

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

Melanie Mason and Dolores Mason,

*Plaintiffs – Appellees*

v.

Helping Our Seniors, LLC,

*Defendant – Appellant*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION

# REPLY BRIEF OF APPELLANT

Ryan C. Reed
Anna K. MacFarlane
PULMAN, CAPPUCCIO, & PULLEN, LLP
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

*Attorneys for Appellant Helping Our Seniors, LLC*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................... i

TABLE OF AUTHORITIES ............................................................................. ii

SUMMARY OF THE ARGUMENT ................................................................... 1

ARGUMENT ................................................................................................... 2

    The Evidence Supports that the Caretakers Were Independent Contractors, not Employees of Appellant ................... 2

CONCLUSION ................................................................................................ 6

CERTIFICATE OF SERVICE ............................................................................ 8

ECF CERTIFICATION .................................................................................... 9

CERTIFICATE OF COMPLIANCE ................................................................... 10

4869-2956-6576, v. 1

## TABLE OF AUTHORITIES

**Case Law**                                                              **Page**

*Diggs v. Harris Hosp.-Methodist, Inc.*,
   847 F.2d 270 (5th Cir. 1988) ..................................................... 2, 3

*Spirides v. Reinhardt*,
   613 F.2d 826 (D.C. Cir. 1979) ....................................................... 3

**Statutes**                                                             **Page**

42 U.S.C. § 2000e(b) ............................................................................ 2

4869-2956-6576, v. 1

## SUMMARY OF THE ARGUMENT

Appellees Melanie and Dolores Mason ("Appellees") mischaracterize Appellant Helping Our Seniors, LLC's ("HOS") arguments as to the evidence presented before the trial court regarding whether the caretaker employees were independent contractors rather than employees of HOS. Rather than rehash all of its arguments raised in its Appellant's Brief, HOS wishes to underscore that the evidence presented at trial support that the caregivers are independent contractors not employees, and that the district court erred in finding that the caregivers were misclassified. As such, the district court erred in finding that Title VII applied to HOS.

ARGUMENT

### The Evidence Supports that the Caretakers Were Independent Contractors, not Employees of HOS.

Appellees overstate the evidence presented to the trial court concerning the hybrid economic realities/common law control test. Appellees assert that the control portion of the test weighs in their favor because of on-boarding such as purportedly "extensive orientations" and policies, as well as an alleged "dress code." Appellees Br. at 31-32.

The parties agree that Title VII of the United States Code only applies to a qualifying "employer," which is defined as a "person . . . who has fifteen or more employees." 42 U.S.C. § 2000e(b). The parties agree that one of the central questions on appeal is whether the caregivers were employees or independent contractors. Whether a worker is an employee or an independent contractor is analyzed under the economic realities/common law control test in the Fifth Circuit. *Diggs v. Harris Hosp.-Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir. 1988). The economic realities/common law control test analyzes "the economic realities of the work relationship, and the extent to which the one for whom the work is being done has the right to control the details and means by which the power is to be performed, with emphasis on this latter control factor."

*Diggs*, 847 F.2d at 272. The central inquiry of the hybrid economic realities/common law control test is whether the purported employer exercised control over the "means and manner" of the purported employees' job duties. *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979) ("Nevertheless, the extent of the employer's right to control the 'means and manner' of the worker's performance is the most important factor to review here, as it is at common law and in the federal statutes."). To reiterate, HOS did not exert full control over the "means and manner" of the caregivers' job performance. *See Spirides*, 613 F.2d at 831.

The person or entity with ultimate control over the caretaker's job performance and duties was the client, not HOS. ROA.411-13. Merely because HOS set initial hiring standards, passed along state-required policies to the caregivers, and evaluated the caregivers does not mean that HOS controlled the "means and manner" in which the caregivers performed their job duties. In fact, Ms. Cave testified that "[t]here's no way that [HOS] can provide supervision over [the] caregivers." ROA.529. At all times, the caregivers performed their duties at the respective client's residence, not at the HOS office. ROA.411-13. HOS would pair caregivers with clients based on specific client needs, which were set by

the client. ROA.411-13. Each client has a different set of requirements and needs for caregiving assistance. ROA.411-13. Caregivers had the option to accept a client placement and had complete discretion in how to perform their duties in assisting clients. ROA.431. As such, there is overwhelming evidence that HOS did not control how the caregivers performed their job duties, and virtually no evidence of control by HOS over the "means and manner" of the caregivers job performance. As discussed above, HOS did not control the caregivers and how they performed their duties which were set by the clients and took place at the client's residence or nursing home.

The economic realities of the work relationship further support the caregivers being independent contractors. Appellees mischaracterize HOS's evidence regarding the economic realities of the work relationship by asserting that "[t]he most that HOS can muster in this regard is that caregivers had to have auto liability insurance." Appellees' Br. at 35. This is incorrect. Testimony elicited at trial showed that multiple enumerated economic realities factors weighed in favor of the caregivers as independent contractors, not employees of HOS. For example, the caregivers were able to perform and did perform their job duties without

supervision from HOS (ROA.529); the elderly clients were the ones who set the duties for each caregiver (ROA.529); each caregiver was assigned to a client site and that there was no on-site supervision by HOS (ROA.531, ROA.529); any equipment used by the caregivers was provided by the client, not HOS (ROA.430); special skills were required in performing caregiver duties and each specific skillset is entirely dependent a given client's needs (ROA.531); HOS did not provide annual leave to caregivers (ROA.783); the work relationship could be terminated by either party without notice (ROA.459); the caregivers did not accumulate retirement benefits and HOS did not pay social security taxes (ROA.783); caregivers filed their taxes as independent contractors (ROA.783); and, finally and most importantly, both HOS and the caregivers intended the working relationship to be an independent contractor relationship (ROA.525).

Ultimately, the trial court erred in finding that the caretakers should have been classified as employees of HOS for purposes of Title VII. The overwhelming evidence shows that the caregivers were independent contractors, and their duties were performed independently in line with the independent contractor agreements they all executed.

## Conclusion

There was overwhelming evidence presented at trial showing that HOS did not qualify as an "employer" under Title VII's definition because the caregivers were properly classified as independent contractors and not employees. HOS did not exert control over how the caregivers performed their job duties, and could not have by virtue of the fact that the duties were performed at each client's residence. The caregivers who contracted with HOS all understood the working relationship and agreed to it by signing an independent contractor agreement. Additionally, per the agreement with HOS, all of the caregivers enjoyed the freedom to accept or reject jobs at their discretion and performed caregiving tasks independently and without supervision of HOS. HOS did not provide any employee benefits to the caregivers and did not pay social security taxes for them. All caregivers filed taxes on their own as independent contractors, further demonstrating the parties' shared intent to be considered independent contractors. As such, the trial court erred in finding that HOS was an employer under Title VII.

Respectfully submitted,

**PULMAN, CAPPUCCIO, & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Ryan C. Reed*
　　Ryan C. Reed
　　Texas State Bar No. 24065957
　　rreed@pulmanlaw.com
　　Anna K. MacFarlane
　　Texas State Bar No. 24116701
　　amacfarlane@pulmanlaw.com

ATTORNEYS FOR APPELLANT

## CERTIFICATE OF SERVICE

I certify that the foregoing instrument has been served via the Court's electronic filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on July 19, 2023, on all registered counsel of record identified below:

Michael V. Galo, Jr.
Galo Law Firm, P.C.
4230 Gardendale, Bldg. 401
San Antonio, Texas 78229

*/s/ Ryan C. Reed*
Ryan C. Reed

## ECF Certification

I certify that: (1) required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Ryan C. Reed*
Ryan C. Reed

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned certifies this brief complies with the type-volume limitations of Rule 32(a)(7)(B).

1. Exclusive of the exempted portions in Federal Rule of Appellate Procedure 32(f), the brief contains 1,076 words.



2. The brief has been prepared in proportionally spaced typeface using Microsoft Word 2013 in 14-point, Century font.

3. The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Federal Rule of Appellate Procedure 32(a)(7)(B), may result in the court's striking the brief and imposing sanctions against the person signing the brief.

/s/ Ryan C. Reed
Ryan C. Reed

4869-2956-6576, v. 1